THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARTHUR BRADSHAW, Defendant-Appellant.

First District (1st Division)    No. 77-826

Opinion filed October 10, 1978.

Ralph Ruebner and Susan McElroy, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Renee Goldfarb, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Arthur Bradshaw (defendant) was indicted for armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2). After a bench trial, defendant was found guilty and sentenced to 5 to 8 years. Benny Weems, a codefendant, was acquitted. Defendant has appealed.

In this court defendant urges that the trial court should not have considered the identification testimony as to defendant where the identical testimony had been rejected as to codefendant Weems and the evidence failed to prove defendant guilty beyond a reasonable doubt.

On May 5, 1974, shortly before midnight, Rufus Hawkins, the complaining witness, stopped at a tavern on his way from work. After about 20 minutes he started to walk home. Three individuals accosted him but he ran away. The same persons caught him in front of his home and proceeded to rob him. Hawkins testified that the thieves threatened him with knives and took a torn one-half of a $1 bill and $100 bill from him. Defendant put a knife around his neck. In addition, the codefendant Weems forced a ring from his finger by cutting the ring. Hawkins went back to the tavern to look for the men and then he called the police. A man named Melvin Lemon then entered the tavern. Hawkins had a conversation with Lemon. Hawkins testified that he then left the tavern and "started to cross where the police had two suspects." He did not see these men because the police "told me to go back."

Later that evening at a lineup in the police station, Hawkins identified the defendant and Weems as the men who had robbed him. During the trial, Hawkins identified two pictures of the lineup and designated the two men he had identified. He identified the torn half of the $1 bill and the cut ring. He also identified a knife as having been used by his assailants.

In addition, Hawkins testified that he saw his assailants face-to-face for two seconds. He stated that he did not testify at the preliminary hearing that it was for one second. He stated that he had the torn dollar bill in his possession for about 8 years. The bill in question was dated 1969. On direct examination he stated he had three or four beers at the tavern. On cross-examination he said he had "a beer or two." Hawkins was uncertain as to which of his assailants had removed his wallet from his pocket. He did not remember the clothing worn by defendant or codefendant Weems.

Hawkins also testified that during trial he had a conversation with an assistant public defender. Hawkins then signed and dated two copies of a

statement tendered to him by this attorney. Hawkins told the attorney that he would like to drop the charges as there had been too many continuances. He denied telling the public defender that he could no longer identify the defendant and codefendant. The statement was to the effect that Hawkins had mistakenly identified defendant and codefendant Weems as the persons who had robbed him. The trial court received this statement in evidence.

Police Officers Drozd and Cronin were stopped by Melvin Lemon in the area shortly after midnight. They had a conversation with Lemon. Some two blocks away, driving in their police car, they observed two black persons. One was wearing a red jacket and an orange hat; the other was wearing a black jacket, a black skull cap and a shirt with purple spots. The officers recovered a pocket knife from each of these men. The officers arrested and handcuffed the men and drove back to the tavern. They spoke to the complaining witness, Rufus Hawkins, and asked if he had been robbed. He responded affirmatively. The officers told Hawkins not to come near the car but to await a lineup. They then returned to their car.

Officer Drozd testified that he saw the defendant trying to put an article down in the back seat of the car. Upon examination the officer found this to be a cut or split Masonic ring with the initial "G" embodied thereon. Drozd also recovered from the defendant's possession one-half of a $1 bill and $22. When Drozd went on duty at 5 p.m. he had checked the back seat of the squad car and found nothing.

Officer Cronin, who had accompanied Drozd, corroborated this evidence regarding the arrest, the recovery of the ring from the back seat and the absence of any article at the previous check of the seat. Officer Cronin also testified that Sacramento, where the robbery took place, is a boulevard with good lighting. There is a street light in front of Mr. Hawkins' home and also a porch light. Officer Drozd expressed the opinion that when a person's hands are cuffed it is possible for this person to put his hand in his rear pocket.

Officer William Bogue, a police department investigator, testified he conducted a police station lineup on May 5, 1974. The complaining witness, Rufus Hawkins, pointed to two subjects in the lineup; namely, the defendant and codefendant Weems. The officer did not recall which of the parties was which. He identified photographs of the lineup and identified the defendant and the codefendant in open court.

At the close of the State's case, the trial court granted the motion of codefendant Weems for an acquittal.

Defendant testified that he never had possession of the allegedly stolen ring. He testified that he never saw the ring before and also that he first saw it at the police station after his arrest. He stated that he never saw

Officer Drozd remove a ring from the back of the squad car. He admitted that he had one-half of the torn dollar bill in his possession but testified that he had carried this item for three or four months. He stated that he had found this part of the bill in the apartment building where he lived. The defense offered in evidence the statement signed by Hawkins and rested.

Subpoenas were issued for Melvin Lemon during the course of the trial. Police officers were unable to locate him. He did not appear to testify.

Defendant's argument is purely simplistic. Defendant reasons that the identification testimony of the victim was so weak that the trial court acquitted the codefendant Weems at the close of the People's case. Therefore, defendant contends that because the proof as to defendant's "identity is identical" defendant was entitled to be discharged. The overwhelming difficulty with this argument is that it completely disregards the testimony of the police officers regarding possession by defendant of a part of the proceeds of the robbery immediately after the commission thereof. These facts completely destroy the contention that the testimony was "identical" as to the defendant and the codefendant.

■■ The courts of Illinois are numbered with the majority of American courts in adhering to the principle that the discharge of a codefendant does not itself raise a reasonable doubt as to the guilt of other defendants unless the evidence against all defendants is identical in all respects. In *People v. Stock* (1974), 56 Ill. 2d 461, 465, 309 N.E.2d 19, the supreme court held:

> "The general rule in Illinois and the majority rule elsewhere is that the failure of a jury to convict one codefendant does not raise a reasonable doubt as to the guilt of the other codefendants. (*People v. Rogers* (1959), 16 Ill. 2d 175; Annot. (1968), 22 A.L.R.3d 720.) For a reasonable doubt to be raised in such cases, it must be shown that the evidence given against all of the defendants is identical in all respects. (*People v. Mirabella* (1920), 294 Ill. 246, 248.) * * *."

In *People v. Stinson* (1977), 47 Ill. App. 3d 910, 914, 365 N.E.2d 467, this court cited *Stock* and arrived at the same result where the evidence was "not identical as to each co-defendant but, rather, clearly supports the guilt of one and the innocence of the other." This court has also held that, " '[w]hen there is the slightest difference in the evidence as between two persons jointly tried * * *' " acquittal of one defendant will not require acquittal of the other. (*People v. Jones* (1971), 132 Ill. App. 2d 623, 625, 270 N.E.2d 288, *appeal denied* (1971), 47 Ill. 2d 591, quoting from *People v. Edwards* (1947), 81 Cal. App. 2d 655, 661, 185 P.2d 74.) This principle is long established in Illinois. *People v. Mirabella* (1920), 294 Ill. 246, 128 N.E. 374.

■■ In the case before us the trial judge acquitted the codefendant Weems

at the close of the State's case. However, the court denied a motion for directed verdict as to defendant. The court commented that as to defendant the State had furnished "circumstantial corroboration." The record strongly supports this statement by the trial judge. It appears from the testimony of Officers Drozd and Cronin that defendant and codefendant were arrested shortly after commission of the crime. At that time defendant was in possession of a torn half of a one dollar bill which the complaining witness identified as his property. It appears from the testimony of the officers that defendant, while sitting in the police car, had possession of a split or cut Masonic ring with the initial "G" thereon. The testimony of the complaining witness is that this property was his own and that the ring had been partly split by his assailants in carrying out the robbery.

■■ This exclusive and unexplained possession of property so recently stolen raised an inference of guilt which could well be sufficient to sustain the conviction. (*People v. Hawkins* (1963), 27 Ill. 2d 339, 341, 189 N.E.2d 252, and *People v. Smith* (1977), 51 Ill. App. 3d 87, 92, 366 N.E.2d 426, citing *People v Harris* (1972), 53 Ill. 2d 83, 85-87, 288 N.E.2d 873.) In our opinion, the testimony of the police officers in this regard furnishes strong corroboration of the identification of the defendant and constitutes a sufficient basis for finding the defendant guilty beyond a reasonable doubt despite acquittal of the codefendant as to whom the corroborating evidence did not apply.

For this reason the cases cited by defendant are inapplicable here. In each of these cases there was no evidence to corroborate the faulty identification testimony. *People v. Cullotta* (1965), 32 Ill. 2d 502, 207 N.E.2d 444; *People v. McGee* (1961), 21 Ill. 2d 440, 173 N.E.2d 434 and *People v. Lonzo* (1974), 20 Ill. App. 3d 721, 315 N.E.2d 256, *appeal denied* (1974), 57 Ill. 2d 605.

■■ It is true that defendant testified in his own behalf and denied that he had ever seen the ring before; although he testified two questions later to the effect that he had seen the ring at the police station. He also testified that he did not have possession of the ring, it was never in his pocket and he never dropped it in the police car. This testimony was a categorical denial of the testimony of the two police officers. Its only effect was to controvert the issue of possession which is simply a question of fact. (*Harris*, 53 Ill. 2d 83, 87.) This testimony by the defendant thus raised simply an issue of credibility which it was the duty of the trial court to decide. We cannot say on the entire record that the proof here is so unsatisfactory as to create a reasonable doubt of guilt. *People v. Lofton* (1977), 69 Ill. 2d 67, 72-73, 370 N.E.2d 517.

■ Defendant finally attacks the evidence of possession of property recently stolen as being circumstantial. It is correct that the evidence of

possession of the stolen property is circumstantial, as opposed to direct. However, it is equally correct that guilt may be established entirely by circumstantial evidence provided that the proof of circumstances is of a conclusive nature and tendency leading on the whole to a reasonable and moral certainty of the guilt of the accused. Each and every individual link in the circumstantial chain need not in itself comply with this requirement as long as all of the evidence taken together is sufficient. Circumstantial proof as such does not require proof beyond any possibility of doubt. *People v. Williams* (1977), 66 Ill. 2d 478, 484-85, 363 N.E.2d 801, and authorities there cited. See also *People v. Benedik* (1974), 56 Ill. 2d 306, 309, 307 N.E.2d 382, and *People v. Dukett* (1974), 56 Ill. 2d 432, 441, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and BUCKLEY, JJ., concur.