THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VINCENT BRENT, Defendant-Appellant.

First District (3rd Division) No. 85—1003

Opinion filed February 10, 1988.—Modified on denial of rehearing November 2, 1988.

Steven Clark and Thomas J. Long, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Rimas F. Cernius, and Alison R. Perona, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Defendant Vincent Brent was charged with three counts of murder, four counts of aggravated arson and one count of arson for setting a July 1982 apartment building fire which resulted in the death of one person and injuries to four others. After a bench trial, he was found guilty of all counts and sentenced to serve a 30-year prison term on one count of murder and concurrent 15-year terms for each of the counts of aggravated arson. On appeal, he contends that he was denied a fair trial by the admission of an out-of-court statement as substantive evidence of his guilt; that the statute which allows such admissions is unconstitutional; that he was denied the effective assistance of counsel guaranteed by the sixth amendment of the constitution; that he was not proven guilty beyond a reasonable doubt; that the aggravated arson statute under which he was convicted is unconstitutional; and that the single act he was found to have committed cannot provide the basis for multiple criminal convictions.

On the night of the fire, a witness who lived across the street from the site of the fire called police and reported that she had heard glass breaking, gone to her window, and seen a man running from the burning building. She described the man as an Hispanic or light-skinned black, age 23 to 35, tall, slender, with "frizzy" hair. She also noticed that he was wearing shorts. Defendant, who in each element matched the description given by the witness, was wearing shorts when he was arrested in his home several hours after the fire. The next day, the witness viewed a lineup of suspects and identified defendant, but that identification was characterized by police as "tentative," and details of the lineup were not recorded.

William McCane, who lived in the apartment where the fire started, testified that he had known defendant from the neighborhood, and that on the night of the fire, he had fought with defendant outside a bar in the area and had hit defendant in the face with a

stick. McCane, who alerted the authorities after he discovered the fire, directed police to defendant's apartment.

Joseph Melkovitz testified that he had seen defendant in the neighborhood on several occasions and that defendant and McCane had once joined in an unsuccessful attempt to jostle him and pick his pocket in a bar. He said that on the night of the fire, he was visiting a friend who worked at a local service station when defendant came in and paid for a small quantity of gasoline. He said that he did not actually see defendant pump gas, but that he saw defendant walking away from the pumps carrying a bottle of liquid. When he saw fire trucks pass by a short time afterward, he followed them and told police at the site of the fire what he had seen.

A police department arson investigator testified that the fire appeared to have been set in McCane's first-floor apartment, which was accessible from the street, with a liquid accelerant poured at the base of the window of the apartment.

Patricia Massey, who lived with defendant, testified that he came home at about 2:15 a.m., which was approximately two hours before the estimated time of the fire's start, and that he did not leave again that night. The prosecution introduced a statement signed by Massey while in police custody. That statement indicated that defendant came home between 2 and 3 a.m. on the night of the fire, spoke of his fight with McCane, left at about 3:30 a.m. while still angry, and returned at approximately 4:30, smelling of gasoline. At trial, Massey denied making any such statement and said that she had agreed with police and signed what they showed her only so that she would be allowed to leave.

■ Defendant contends that the statutory provision which allows substantive use of prior inconsistent statements in criminal trials (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.1) is an unconstitutional legislative infringement on judicial power because it changes a rule of evidence developed by prior case law. This argument ignores the long-established principle that the legislature has the power to prescribe new and alter existing rules of evidence or to prescribe methods of proof. (*People v. Wells* (1942), 380 Ill. 347, 354, 44 N.E.2d 32.) The supreme court reaffirmed this principle in *People v. Rolfingsmeyer* (1984), 101 Ill. 2d 137, 140, 461 N.E.2d 410, holding that the legislature had not infringed on judicial authority by allowing the admissibility of a driver's refusal to take a breath test. Since defendant cites no precedent which invalidates a legislative change of evidentiary rules, we hold that the statute involved in the instant case does not unduly infringe on judicial power and is a proper exercise of legislative au-

thority.

■ Defendant also claims that the trial court improperly admitted Massey's statement without first determining that the statement was voluntary. He correctly argues that the voluntary nature of an out-of-court statement must be established before the statement can be admitted at trial. However, in a bench trial, a court's failure to make specific findings of fact does not constitute reversible error where the evidence sustains the court's decision. (*People v. Lerch* (1985), 134 Ill. App. 3d 643, 651-52, 480 N.E.2d 1253.) Furthermore, the court in a bench trial is presumed to consider only proper evidence. (*People v. Earullo* (1983), 113 Ill. App. 3d 774, 447 N.E.2d 925.) Therefore, though the trial court did not explicitly make a finding on the voluntary nature of Massey's statement, we believe that the record supports a finding that Massey's statement was voluntary.

■ The officer who prepared Massey's statement testified that it accurately represented the questions given to Massey and the responses she gave. He testified that she was given the statement to read and correct for errors, and that she signed each page. Massey testified that she had been advised of her rights before being questioned. Defendant's claim that Massey's statement was involuntary is based on her in-court claim that she was tired after 10 hours of detention, that police had told her that she could be separated from her child, and that she wanted to leave the station. Since detention itself is not evidence of coercion, and since the other testimony admitted supports the conclusion that the statement was voluntary, we reject defendant's claim that Massey's testimony establishes that her statement was involuntary. *People v. Adams* (1980), 91 Ill. App. 3d 1059, 415 N.E.2d 610.

■ Defendant's next contention is that he was deprived of the effective assistance of counsel guaranteed by the sixth amendment because defense counsel did not attempt to suppress an identification produced by a "suggestive" lineup and failed to call a witness whose testimony would have contradicted that of a prosecution witness. We find this argument unpersuasive. To establish that counsel was so ineffective as to deny a defendant's constitutional rights, a defendant must show a reasonable probability that absent the alleged errors of counsel, the fact finder would have had a reasonable doubt of his guilt. (*Strickland v. Washington* (1984), 466 U.S. 668, 695, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068-69; *People v. Collins* (1985), 106 Ill. 2d 237, 274, 478 N.E.2d 267.) Defendant has failed to make such a showing here. The lineup identification was characterized by the police as tentative, and this fact was made clear to the trial court. Since

the witness gave an unprompted, detailed description of the man she saw fleeing the scene and positively identified defendant at trial, we believe that the lineup identification played at best a small part in establishing defendant as the arsonist and that suppression of that identification would not have left a reasonable doubt as to his guilt. Nor would the testimony of the witness who, according to defendant, should have been called. That witness, the owner of the service station where Joseph Melkovitz said he saw defendant buy gasoline, allegedly could have testified that he remembered the night of the fire, that Melkovitz' friend was not working that night, and that though people often bought small quantities of gas, he did not remember seeing anyone put gas in a bottle on that night. Defendant does not claim that the owner's testimony would have provided him with an alibi or explicitly denied that he or Melkovitz was at the station on the night of the fire. The minimal extent to which the owner's recollection contradicted that of Melkovitz, plus the fact that the owner was interviewed more than a year after the fire, suggests to us that his testimony would have done little to impeach Melkovitz and done even less to create doubt of defendant's guilt. We therefore hold that the failure to call the owner, like the failure to attempt to exclude the lineup identification, even if error, did not prejudice defendant and did not constitute ineffective representation.

■ We are also unpersuaded by defendant's argument that he was not proven guilty beyond a reasonable doubt. He claims that the eyewitness who identified him did not have sufficient opportunity to view him at the scene of the fire. The specificity of her description to police indicates otherwise, and her in-court identification was positive. The testimony of McCane provided proof of defendant's motive for setting the fire, and the testimony of Melkovitz was consistent with the evidence of the fire's origin. We are unable to view this evidence as leaving a reasonable doubt of defendant's guilt.

■ Defendant's constitutional attack on the aggravated arson statute has been squarely addressed by the supreme court. In *People v. Wick* (1985), 107 Ill. 2d 62, 66, 481 N.E.2d 676, the court ruled that subsection (a)(3) of the statute (Ill. Rev. Stat. 1981, ch. 38, par. 20—1.1) was unconstitutional: "Because aggravated arson as defined by the statute does not require an unlawful purpose in setting a fire, however, the statute as presently constituted sweeps too broadly by punishing innocent as well as culpable conduct in setting fires." Though the court limited its holding to subsection (a)(3), under which the defendant in that case was convicted, its criticism applies with equal force to the statute's other subsections. Applying the *Wick* ra-

tionale, this court held subsection (a)(1) to be unconstitutional. (*People v. Palmer* (1986), 141 Ill. App. 3d 234, 490 N.E.2d 154.) Though the current version of the statute has been amended to correct the infirmity (Ill. Rev. Stat. 1985, ch. 38, par. 20—1.1), the version of subsection (a)(2) which was in force at the time of defendant's actions was clearly unsound. Defendant's convictions and sentences for aggravated arson are therefore vacated.

The trial court, while it found defendant guilty of intentional murder, commission of acts likely to cause death or great bodily harm, and felony murder, imposed sentence only on the felony murder count. The State concedes that the felony murder conviction and sentence, since they are predicated on the aggravated arson charge, must also be vacated. We affirm the trial court's finding of guilt on the intentional murder count and remand for sentencing on that count. The State also asks that we include in our order directions to sentence defendant on the arson count. Such a sentence would be improper. Multiple convictions and sentences based on the same physical act are improper and only the conviction for the more serious offense may stand. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838; *People v. Gibson* (1981), 99 Ill. App. 3d 1068, 425 N.E.2d 1208.) Though injuries to multiple victims constitute separately chargeable crimes (*People v. Williams* (1985), 131 Ill. App. 3d 597, 475 N.E.2d 1082), the additional sentence sought here is for the crime of arson, which, unlike the aggravated arson charges filed against defendant, does not require proof of injury to any person (Ill. Rev. Stat. 1981, ch. 38, par. 20—1). Accordingly, we find that the instant case presents no multiple-victim basis for allowing defendant's single act to support a conviction for arson as well as murder.

The convictions and sentences for aggravated arson and felony murder based on aggravated arson are vacated. The trial court's finding of guilt on all other counts is affirmed, and the case is remanded to that court for sentencing on the intentional murder count.

Affirmed in part; vacated in part and remanded.

RIZZI and FREEMAN, JJ., concur.