THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL CORREA, Defendant-Appellant.

First District (4th Division)   No. 1—88—1558

Opinion filed November 16, 1989.

Barsy, Joseph & Lichtenstein, of Chicago, and Reno, O'Byrne & Kepley, P.C., of Champaign (Burton Joseph, Maaren M. Plant, and Glenn A. Stanko, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Marie Quinlivan Czech, and Angela M. Tisdale, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Michael Correa, was convicted of possessing obscene magazines with the intent to disseminate them. (Ill. Rev. Stat. 1985, ch. 38, par. 11—20(a)(5).) The trial judge sentenced defendant to court supervision for one year and ordered defendant to pay $750 in fines and costs.

Defendant appeals, contending: (1) the magazines on which the State based its prosecution are not obscene; (2) the trial court erred in completely disregarding his evidence relating to the literary and artistic value of the magazines; (3) the State failed to prove beyond a reasonable doubt the essential elements of the offense; and (4) the criminal complaint was duplicitous and, therefore, void.

We reverse the judgment of the trial court.

BACKGROUND

The record contains the following pertinent facts. Defendant was employed as the manager of Friendly Frank's Comic Shop at 3427 Ridge Road in Lansing, Illinois. Youth officer investigator Anthony Van Gorp served in the Lansing police department. Officer Van Gorp's duties included observing areas where youths congregate.

On the afternoon of November 28, 1986, Officer Van Gorp and his partner went to the comic book store. Three of the store's four walls were filled with cartoon comic books, arranged on four rows of

shelves on each wall. The cashier's area was located on the fourth wall. The officers perused the comic books and found some that depicted scenes of sexual conduct and nudity. These comic books were not separated in one area of the store; they were found on different walls and on different levels. Van Gorp and his partner returned to the police station and reported to their supervisor.

On December 3, 1986, Officer Van Gorp returned to the comic book store, which was open for business. Van Gorp selected 15 cartoon comic books that depicted scenes of sexual conduct and nudity. At the counter, defendant examined each comic book to find its price. The total bill was $41.10, which Van Gorp paid from police department funds. Defendant accepted payment from Van Gorp and gave the officer change, a receipt, and a bag containing the comic books.

On December 10, 1986, Officer Van Gorp swore out a criminal complaint charging defendant with obscenity, in that he possessed obscene magazines with the intent to disseminate them. Listing their titles, the complaint charged that 7 of the 15 cartoon comic books which Van Gorp bought were obscene. Van Gorp and another officer then went to the comic book store and arrested defendant.

Having waived a jury, defendant was tried by the court. On January 1, 1988, the court found defendant guilty as charged. The sentencing hearing immediately followed defendant's conviction. At the close of the hearing, the court sentenced defendant to court supervision for one year and ordered defendant to pay $750 in fines and costs. Defendant appeals.

OPINION

■ Books, newspapers, magazines, and motion pictures are all forms of expression normally protected by the free speech provisions of the United States and Illinois Constitutions. (U.S. Const., amend. I; Ill. Const. 1970, art. I, §4.) This protection is not affected by the fact that the material is sold for profit, or that it primarily entertains rather than communicates ideas. *Leopold v. Levin* (1970), 45 Ill. 2d 434, 441, 259 N.E.2d 250, 254; *City of Chicago v. Festival Theatre Corp.* (1980), 88 Ill. App. 3d 216, 220, 410 N.E.2d 341, 344-45, *aff'd* (1982), 91 Ill. 2d 295, 438 N.E.2d 159.

■ Further, sexuality is not synonymous with obscenity; expression which is sexually oriented, but not obscene, commands full constitutional protection as speech. (*Festival Theatre Corp.*, 88 Ill. App. 3d at 221, 410 N.E.2d at 345; *City of Rolling Meadows v. Kohlberg* (1980), 83 Ill. App. 3d 10, 15, 403 N.E.2d 1040, 1044.) However, regardless of the form of expression, these constitutional guarantees do

not protect obscene material. *Miller v. California* (1973), 413 U.S. 15, 23, 37 L. Ed. 2d 419, 430, 93 S. Ct. 2607, 2614.

■ In Illinois, a person commits the offense of obscenity when he or she, *inter alia*, creates, buys, procures, or possesses obscene material with the intent to disseminate it, with knowledge of the nature or content of the material, or recklessly failing to exercise a reasonable inspection that would have disclosed the nature or content of the material. (Ill. Rev. Stat. 1985, ch. 38, par. 11—20(a)(5).) The State carries the burden of proving beyond a reasonable doubt the existence of all the elements of the offense. *People v. Thomas* (1976), 37 Ill. App. 3d 320, 323, 346 N.E.2d 190, 192; 67 C.J.S. *Obscenity* §24 (1978).

■ Our statute defines "obscene" as follows:

"Any material or performance is obscene if: (1) the average person, applying contemporary adult community standards, would find that, taken as a whole, it appeals to the prurient interest; and (2) the average person, applying contemporary adult community standards, would find that it depicts or describes, in a patently offensive way, ultimate sexual acts or sadomasochistic sexual acts, whether normal or perverted, actual or simulated, or masturbation, excretory functions or lewd exhibition of the genitals; and (3) taken as a whole, it lacks serious literary, artistic, political or scientific value." (Ill. Rev. Stat. 1985, ch. 38, par. 11—20(b).)

This statutory definition incorporates the United States Supreme Court's three-part test of obscenity with examples. *Miller*, 413 U.S. at 24-25, 37 L. Ed. 2d at 430-31, 93 S. Ct. at 2615.

■ The statute further directs the fact finder to determine obscenity with reference to ordinary adults. However, the determination must be made with reference to children if the circumstances surrounding the dissemination of the material show that the material was directed to children. Ill. Rev. Stat. 1985, ch. 38, par. 11—20(c).

■ These criteria insure that no one may be convicted for the sale or exposure of obscene materials unless those materials depict or describe patently offensive "hard-core" sexual conduct specifically defined by the regulating statute or ordinance. (*Miller*, 413 U.S. at 27, 37 L. Ed. 2d at 432, 93 S. Ct. at 2616; *Kohlberg*, 83 Ill. App. 3d at 15, 403 N.E.2d at 1044; *People v. Burkhardt* (1973), 11 Ill. App. 3d 760, 765, 297 N.E.2d 694, 698.) Lastly, this court is required, as are all appellate tribunals, to make an independent constitutional judgment on the fact of obscenity. *People v. Ridens* (1974), 59 Ill. 2d 362, 373-74, 321 N.E.2d 264, 270 (and cases cited therein).

■ After reviewing each of the seven cartoon comic books at is-

sue, we cannot say that they constitute hard-core obscenity. Omaha The Cat Dancer, Numbers 1, 2, and 3, are in the nature of a soap opera, with primary and secondary plots that continue in each subsequent issue. We find that the depicted nudity and sexual conduct of the cartoon characters (animals with human attributes) are part of a subplot incidental to the main storyline. The Bodyssey is a square-bound cartoon comic book with at least 52 pages, containing a complete story in the nature of a paperback novel. Again, the nudity and sexual conduct depicted in the book are subsidiary to a discernible plot. In terms of the statute, we cannot say that each of these comic books, taken as a whole, lacks serious literary or artistic value.

Bizarre Sex, Number 5, is a collection of short cartoon stories. The majority of these stories contain extremely juvenile humor in incredibly poor taste. The remainder simply make no sense. This critique applies additionally to Weirdo, Numbers 17 and 18, which are also collections of short cartoon stories. We additionally note that they are particularly bizarre. We find no serious literary or artistic value in these magazines.

Nonetheless, we cannot say that they constitute hard-core obscenity. Paraphrasing Justice Stewart of the United States Supreme Court, we shall not attempt today to further define the kinds of material embraced within the term "hard-core obscenity." Perhaps we could never succeed in such a task. However, we know it when we see it, and Bizarre Sex, Number 5; and Weirdo, Numbers 17 and 18; in addition to all of the other cartoon comic books in this case, are not hard-core obscenity. (See *Jacobellis v. Ohio* (1964), 378 U.S. 184, 197, 12 L. Ed. 2d 793, 804, 84 S. Ct. 1676, 1683 (Stewart, J., concurring).) In terms of the statute, we conclude that these comic books are not patently offensive.

We are not impressed with the literary or artistic merit of the cartoon comic books before us. However, that is not the standard which we must apply. We hold that none of the cartoon comic books on which the State based its prosecution constitutes patently offensive hard-core obscenity as stated in the statute. Consequently, defendant's conviction and sentence must be reversed.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.

Reversed.

JIGANTI, P.J., and McMORROW, J., concur.